SAN SEBASTIAN DEVELOPMENT CORPORATION, a Florida corporation, *Appellant,* v. R. O. COUCH. *Appellee.*

138 So. 61.

Division B.

Opinion filed November 24, 1931.

*John D. Shepard,* of Cocoa, for Appellant;
*Fred A. Watts,* of Melbourne, for Appellee.

PER CURIAM.—On September 11, 1929, R. O. Couch filed his bill in the Circuit Court of Brevard County, Florida, in Chancery, against San Sebastian Development Corporation seeking to establish and foreclose a lien for taxes alleged to have been paid by him upon certain lands in Brevard County.

The bill sets forth that on April 10, 1924, appellee procured a tax deed to the land involved from the State of Florida and paid out for taxes on the property the sum of $288.81. Interest is claimed at the rate of 25% for back taxes and at 8% for taxes paid subsequent to issuance of the tax deed.

Process was served upon the resident agent of appellant at Tallahassee, Florida.

On November 4, 1929, decree pro confesso was entered against the appellant, whereupon a master was appointed, testimony taken and final decree entered on December 3, 1929, decreeing a lien to exist in favor of appellee for the full amount of his claim.

The final decree herein ordered that these amounts, together with costs, be paid by appellant, and in default of payment that the master give notice by publication and sell the land on a rule day to the highest and best bidder for cash.

On December 18, 1929, appellee petitioned the court for a rehearing and moved that the final decree be stricken.

On February 25, 1930, the master reported that he had complied with the final decree and made sale of the lands to appellee. This sale was confirmed on February 25, 1930.

On March 14, 1930, the court below denied the petition for rehearing and refused to strike the final decree. This appeal is from the final decree, from the order confirming sale and from the order denying a rehearing and refusing to strike the final decree.

The bill of complaint herein, after setting forth payment of taxes by appellee and his procuring of a tax deed and the claim of complainant for a lien for the amount paid, with interest, then sets forth somewhat in detail that after appellee had procured his tax deed bearing date April 10, 1924, one R. H. Hemphill on November 21, 1925, brought suit against appellee in the Circuit Court of Brevard County, Florida, in chancery; that R. H. Hemphill in his bill claimed to own the lands here involved and that R. H. Hemphill in said suit sought to have his title in and to all the lands here involved quieted and appellee's tax deed decreed to be void and of no effect; that appellee herein was made party defendant in the suit brought by R. H. Hemphill and that a final decree was therein rendered against the appellee on the 2nd day of February, 1928, wherein it was decreed that the title of appellee to the lands here involved, and also his tax deed, was void and of no effect, and that title to all of said land was therein quieted in R. H. Hemphill. The bill of complaint herein attaches a copy of the tax deed issued to appellee which was decreed in the previous suit to be void, and such deed

is made a part of the bill here. A copy of the final decree rendered in the suit brought by R. H. Hemphill is also attached to the bill of complaint herein and by apt words made a part thereof.

The final decree of February 2, 1928, in the suit by R. H. Hemphill against R. O. Couch decrees the tax deed to be void and the fee simple title to the property here involved is therein decreed to be quieted in R. H. Hemphill to inure to the benefit of the San Sebastian Development Corporation, his grantee. No appeal appears to have been taken therein, and there is no provision in the final decree for refund of taxes paid by appellee.

Section 1026 C. G. L., 795 R. G. S., which is Section 3 of Chapter 12409, Acts of 1927, provides that a party recovering land or having declared invalid a tax deed must refund taxes paid, and interest, and make reparation for improvements placed upon the land while the tax deed remained in force and unchallenged.

Said Section 1026 C. G. L., *supra,* reads as follows:

"If any suit at law or in equity involving the validity of any tax deed it shall be held by the court that said tax deed was invalid at the time of its issuance and that title to the land therein described did not vest in the tax deed holder, then, if the taxes for which said land was sold and upon which said tax deed issued had not been paid prior to issuance of such deed, the party in whose favor the judgment or decree in such suit shall be entered, shall pay to the party against whom such judgment or decree shall be entered the amount paid for such tax deed and all taxes paid upon said land, together with twenty-five per cent interest thereon for the first year and eight per cent interest thereon for the time after the first year and all legal expenses in obtaining said tax deed, including publication of notice and clerk's fees for issuing and recording such tax deed, also the fair cash value of all permanent improvements made upon said land by the holder during the life of said tax deed. The amount of such expenses and the fair cash value of improvements, as

aforesaid, shall be ascertained and found upon the trial of the suit, and for which such tax deed holder shall have a prior lien upon said land for the payment of said sums of money in full.''

The above statute appears to have been in force when appellee procured his tax deed and paid taxes upon the lands described in the deed. The court below, by its decree which is appealed from to this court, gave effect to the statute by foreclosing a lien against the land involved for the amount of taxes, and interest, which the holder of the invalid tax deed had expended prior to the decree adjudicating that the tax deed was invalid and setting it aside. The amount decreed was for principal $221.81, for interest thereon at 8% from April 10, 1925, $81.56, and penalty of 25% for first year $55.70. After finding that the complainant was entitled to have and receive the immediate payment of the foregoing indebtedness, namely, the sum of $360.07, the court decreed that there was a valid and subsisting statutory lien under Section 1026 C. G. L., *supra,* upon the property for the aforesaid amount and ordered that said lien be foreclosed by a sale of the property if the same were not paid by a date named in the decree.

The defendant in the lower court who is the appellant here, contends that under the holding of this court in Hughey v. Winborne, 44 Fla. 601, 33 So. 249, that where the defendant in a proceeding in equity to declare void a tax deed held by him based upon a certification of lands to the State for the non-payment of taxes makes no proof as to the amount of taxes and disbursements which he claims should be refunded to him by complainant, that it is not error for the court to declare void the deed without making provision for the payment by complainant to defendant of said taxes and disbursements.

The appellant also contends that a decree quieting title against an invalid tax deed destroys all liens not protected

by provisions in the decree, if the lien holders were made parties defendant. 51 C. J. 284; Morarity v. Calloway, 134 Ind. 503, 34 N. E. 226.

We are in accord with the principle that in general a decree quieting title destroys all liens not protected by proper provisions in the decree if the lien holders were made parties defendant, but this principle has no application to a proceeding under Section 1026 C. G. L., *supra*, to enforce a statutory lien for taxes and disbursements made by the holder of an invalid tax deed prior to the time the tax deed was decreed to be invalid.

In this connection it will be noted that the language of the statute relied on is "the party in whose favor the judgment or decree in such suits shall be entered" shall pay to the party "against whom such judgment or decree shall be entered", the amount paid for tax deed, etc.

The language of the present statute is materially different from the statute which was involved in Hughey v. Winborne, *supra*. Under the present statute no enforceable duty to pay the amount of taxes and disbursements involved in the issuance of an invalid tax deed arises until *after* the judgment or decree declaring the tax deed invalid has been entered.

The 1927 statute which is Section 1026 C. G. L., *supra*, purports to give to the party who has had his tax deed declared void, either in a suit in equity or at law, the right to recover in an *independent suit* the amount he has put out on his void tax deed. Assuming that under this statute such party may claim this recovery by way of counter-claim in an equity suit brought to cancel a tax deed as void, such party is not compelled to do so in view of the plain language of Section 1026, C. G. L., *supra*, as it now reads.

A reference to the original court files in the archives of the Supreme Court in the case of Hughey v. Winborne, 44 Fla. 601, 33 So. 249, as well as to the original statute

involved in that case, which was Section 53 of the 1891 tax act found no page 25 of the 1891 Session laws, will show that the present statute of Florida is very materially different from the one dealt with in that case.

The original satute, which now constitutes Section 1026, C. G. L., *supra,* has been amended several times by the Legislature to meet and avoid the objections which have been found in the decisions of this Court with regard to the effectiveness of the statute to accomplish the purpose which was intended to be accomplished. For example, in Porter v. Carroll, 92 So. 809, 84 Fla. 62, it was held that said Section did not apply in a case where the defendant in an ejectment suit claimed under a deed from one who purchased at a tax sale pursuant to which an invalid tax deed had been issued. In consequence of this decision the 1927 amendment expressly made the statute apply to any case where a tax deed had been declared invalid in an action *at law* as well as in equity.

The 1927 amendment was to cover what the Legislature thought were loopholes which had been found through decisions construing the original statute prior to that time, thereby permitting the delinquent taxpayer to defeat the purpose of the Act which was to subrogate the purchaser at tax sale to the same rights that the State had to enforce its lien for taxes against delinquent taxpayers after a tax sale had been made and a void tax deed issued.

The Legislature obviously proceeded in the enactment of the statute on the theory that the only way the Legislature could adequately provide for the enforcement of taxes was to make effective the sale of property of delinquent taxpayers at tax sales; the only way this sale could be successfully accomplished was to attract someone to buy; the best means to induce a buyer to invest at tax sales was to give the tax sale purchaser some reasonable and fair assurance by statute or otherwise that he would

at least get his money back if the tax deed was later found to be invalid and was so declared by the court.

So the statute as now written provides that if in a suit at law or equity "involving" the validity of any tax deed, it shall be held by the Court that said tax deed was invalid, then, if the taxes for which the said land was sold had not been paid by the taxpayer prior to the issuance of such deed, the party in whose favor the judgment or decree was rendered in the suit "involving" the tax deed *shall pay* to the party against whom such judgment or decree was entered the amount paid for such tax deed and all taxes paid upon said land, with the statutory penalties.

The present statute expressly creates a lien "upon said land" for the repayment of said sums of money in full. As has been pointed out, the object of the suit from which the appeal in this case was taken was to enforce said lien "upon said land" as provided for by Section 1026 C. G. L., *supra,* which was originally Section 795 R. G. S., as amended in 1927.

The State in its sovereign capacity has the right to require the amount of the State's original tax lien to be discharged by payment, and if the money therefor has already been advanced to the State by a purchaser at tax sale, it seems clear that the Legislature has the right to subrogate the person advancing the tax money to the State at the tax sale to the State's right of action against the delinquent taxpayer for the amount of the taxes which ought to be paid and to enforce this right of action against the delinquent taxpayer by making the amount of taxes which ought to have been paid a lien "upon said land", thereby holding the land liable for the tax until the tax is paid and allowing its recovery out of the land when the delinquent taxpayer has a tax deed issued by the State invalidated thereafter on technical grounds.

The policy of the statute, Sec. 1026 C. G. L., is to give the holder of an invalid tax deed the right *at least* to get his money back in the event that the delinquent taxpayer should be able to upset the tax sale proceedings through some misprision of the public officials charged with administering the tax law. The law contemplates the preservation of unpaid taxes as a direct charge and lien on the land until such taxes are satisfied by payment, either to the State and County by the taxpayer, or to the person who has succeeded to the rights of the State and County in the premises after the tax sale and the issuance of a tax deed pursuant thereto after the period of redemption has expired.

The present statute was passed by the Legislature in 1927 on recommendation of departmental officials as a means of attracting purchasers at tax sales and to prevent the increasingly large number of parcels of land sold at such sales from going to the State for want of any other purchaser who would take a tax sale certificate and advance the taxes assessed which were necessary to keep up the State's revenue. Its object was to assure to the purchaser at the tax sale the good faith of the State in the conduct of tax proceedings and to make reasonably certain to the purchaser at a tax sale that he would either get title to the land which the State was offering for sale or would secure a return of his money, with interest, as a consideration for becoming a purchaser.

Section 1026 C. G. L., *supra*, was construed by the court below as giving to the person against whom a decree or judgment was rendered declaring a tax deed void *an independent* right to proceed *in rem* against the land covered by the void tax deed on which the taxes were assessed to recover the amount of money under which the tax certificate purchaser had invested when it appeared that the tax for which the invalid deed was made had never been discharged by payment. We agree with this

construction of the statute, which is in complete harmony with its obvious purpose and intent. The decree appealed from is therefore affirmed.

Decree affirmed.

WHITFIELD, P.J., AND TERRELL AND DAVIS, J.J., concur.

BUFORD, C.J., AND ELLIS AND BROWN, J.J., concur in the opinion and judgment.